# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3580 | **DATE** | 3/21/2002 |
| **CASE TITLE** | JOHN SZABO vs. DONALD SNYDER | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. John Szabo's amended petition for Writ of Habeas Corpus is granted. Execution of the writ is stayed on the condition that the State of Illinois grants John Szabo a new sentencing hearing and provides appointed counsel, within a reasonable time, not to exceed 120 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |
| LG | courtroom deputy's initials |

number of notices

MAR 25 2002
date docketed

U.S. DISTRICT COURT

docketing deputy initials

date mailed notice

02MAR 22 PM 4:41

FILED 10

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS,
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>ex rel. JOHN SZABO, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 99 C 3580 |
| | ) | |
| v. | ) | The Honorable John W. Darrah |
| | ) | |
| DONALD SNYDER, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on condemned prisoner John Szabo's ("Petitioner")

Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 against Donald Snyder,

Director of the Illinois Department of Corrections. For the following reasons, Szabo's Petition is

GRANTED.

## BACKGROUND

### A. Previous Proceedings

On January 27, 1979, John Rajca, age nineteen, and his brother Christopher Rajca, age

seventeen, were found dead on a farm road near Naperville, near the entrance of the Avery Gravel

Pit. *People v. Szabo* ("*Szabo I*"), 94 Ill. 2d 327, 335 (1983). John had been killed by a bullet wound

to the chest. *Szabo I*, 94 Ill. 2d at 335. Christopher died of multiple stab wounds. *Szabo I*, 94 Ill. 2d

at 335. Petitioner was charged with the murders; he was twenty-one years of age.

Robert Leatherman, Petitioner's accomplice, testified at Petitioner's trial pursuant to a plea

agreement with the State. *Szabo I*, 94 Ill. 2d at 335. "Leatherman, who was 16 when the offenses were committed, would admit to the two murders as a juvenile and would be committed to the Juvenile Division of the Department of Corrections until he reached 21." *Szabo I*, 94 Ill. 2d at 335.

Leatherman testified that one week before the murders, he set up a sale of drugs between John Rajca and Petitioner. *Szabo I*, 94 Ill. 2d at 336. Leatherman also testified that before going to the meeting with the Rajcas, he and Petitioner used cocaine. *Szabo I*, 94 Ill. 2d at 338. According to Leatherman, Petitioner killed both John and Christopher.

At trial, the State presented other witnesses and physical evidence that tied Petitioner to the murders. *Szabo I*, 94 Ill. 2d at 340-42. Petitioner was convicted of two counts of intentional murder, two counts of felony murder, and one count of conspiracy to commit armed robbery. *Szabo I*, 94 Ill. 2d at 334.

At the sentencing hearing, Petitioner testified that Leatherman planned and announced the robbery, and Leatherman stabbed Christopher Rajca. *Szabo I*, 94 Ill. 2d at 358. Petitioner was barred from introducing allegedly exculpatory polygraph evidence. *Szabo I*, 94 Ill. 2d at 362-63. Dr. Honiotes, a doctor who had treated Petitioner for psychological problems, testified that Petitioner had explosive personality disorder, had used drugs since age eleven or twelve, and had attempted suicide in December 1978, two months before the murders. (R. 2571-72, 2630, 2632-33.)

The State called two doctors to rebut Dr. Honiotes' testimony. Both doctors testified that Petitioner had antisocial personality disorder and drug and alcohol addiction disorder. (R. 2752, 2768, 2792-93, 2798-9.) Petitioner was sentenced to death for the murders and three years' imprisonment for conspiracy. *Szabo I*, 94 Ill. 2d at 334.

Petitioner took a direct appeal to the Illinois Supreme Court. The Court held that it was error

to enter judgment on all four convictions. *Szabo I*, 94 Ill. 2d at 350. The Illinois Supreme Court found that the trial court erroneously denied Petitioner discovery of Leatherman's oral statements to the State's Attorney. *Szabo I*, 94 Ill. 2d at 350.

The Court vacated Petitioner's conviction and remanded the case to the trial court "for entry of an order directing the State to reconstruct the written memoranda of Leatherman's pretrial statements, and to deliver them to the court for an *in camera* inspection." *Szabo I*, 94 Ill. 2d at 350. If the notes were discoverable, they were to be delivered to defense counsel, and a new trial was to be ordered. *Szabo I*, 94 Ill. 2d at 350. If they were not, the trial court was to reinstate the convictions and grant Petitioner a new sentencing hearing. *Szabo I*, 94 Ill. 2d at 350, 367-68.

On remand, after *in camera* inspection of the notes of the pretrial Leatherman interviews, the trial court found that the materials were not discoverable because they were work-product, not impeaching, and raised no reasonable doubt as to Petitioner's guilt. *People v. Szabo* ("*Szabo II*"), 113 Ill.2d 83, 87 (1986). The trial court then reinstated the convictions and ordered a new sentencing hearing.

A new sentencing hearing was held. At the new sentencing hearing, Petitioner was represented by Paul Bjekich and Daniel Doyle. *People v. Szabo* ("*Szabo IV*"), 186 Ill. 2d 19, 21 (1999). Petitioner's counsel presented Petitioner's father, two sisters, and brother-in-law as the only evidence in mitigation. *Szabo IV*, 186 Ill. 2d at 29.

At this second sentencing hearing, no testimony regarding Petitioner's psychological problems, drug and alcohol addiction or suicide attempts was adduced from Dr. Honiotes, who had testified at the first sentencing hearing, nor from any other expert. Moreover, neither Bjekich nor Doyle made any attempt to investigate or call any correctional officers, who would have testified to

-3-

Petitioner's good conduct during his incarceration. In addition, Bjekich and Doyle made no attempt to obtain and introduce Department of Corrections records regarding Petitioner, which would have demonstrated the same good conduct. *Szabo IV*, 186 Ill. 2d at 52. This second sentencing hearing again resulted in a sentence of death. *Szabo II*, 113 Ill. 2d at 87. The Illinois Supreme Court affirmed the conviction and death sentence. *Szabo II*, 113 Ill. 2d at 93.

In 1987, Petitioner filed a *pro se* petition for post-conviction relief. *People v. Szabo* ("*Szabo III*"), 144 Ill. 2d 525, 528 (1991). In his petition, Petitioner alleged that his trial attorney "David Landau had been prevented from rendering effective assistance of counsel . . . due to disciplinary problems which led to Landau's subsequent disbarment." *Szabo III*, 144 Ill. 2d at 528. Significantly, Petitioner also contended that counsel at the resentencing hearing was also ineffective. *Szabo III*, 144 Ill. 2d at 528.

Lawrence Morissey was appointed to represent Petitioner in the post-conviction proceeding. Morrissey "informed the court that the defense would stand on the *pro se* petition" and did not file any supporting affidavits or other documentation regarding the failure of Bjekich and Doyle to present certain evidence in the second sentencing hearing mentioned above and which will be discussed further below. *Szabo III*, 144 Ill. 2d at 528, 532. The trial court denied the petition. *Szabo III*, 144 Ill. 2d at 528.

Petitioner appealed to the Illinois Supreme Court, which affirmed the trial court. The Illinois Supreme Court held that Petitioner had received effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), during his trial and at the resentencing hearing where he was represented by Bjekich and Doyle. *Szabo III*, 144 Ill. 2d at 531. Petitioner also contended he had received ineffective assistance of post-conviction counsel Morrissey as a result of counsel's failure

-4-

to comply with Illinois Supreme Court Rule 651(c) ("Rule 651(c)"). This rule requires appointed counsel to certify that he has amended the *pro se* petition to adequately present the petitioner's claims. *Szabo III*, 144 Ill. 2d at 531. Although no certificate of compliance was in the file, the Illinois Supreme Court held that the error was harmless because the record established that post-conviction counsel had met the requirements of the rule. *Szabo III*, 144 Ill. 2d at 532-33. The Illinois Supreme Court ordered Petitioner to be executed by lethal injection on January 21, 1992. *Szabo III*, 144 Ill. 2d at 533.

In 1993, Petitioner filed a second post-conviction petition, which was properly substantiated with supporting affidavits and other documentation which were absent in the first post-conviction petition. *Szabo IV*, 186 Ill. 2d at 22. Petitioner alleged that counsel in the first post-conviction proceeding did not comply with Rule 651(c) by "not submitting affidavits in support of the petition and by not amending the original *pro se* petition." *Szabo IV*, 186 Ill. 2d at 22. The petition also alleged resentencing counsel's ineffective assistance.[1] *Szabo IV*, 186 Ill. 2d at 22.

An evidentiary hearing was conducted on the second post-conviction petition.[2] One of Petitioner's resentencing attorneys, Paul Bjekich, stated that it had been the defense plan to have the defendant testify to his good conduct in prison. *Szabo IV*, 186 Ill. 2d at 28. Bjekich testified that it was still the defense plan to have Petitioner testify even after Petitioner's motion in limine to restrict cross-examination was denied. *Szabo IV*, 186 Ill. 2d at 28. Bjekich maintained this position when

---

[1] A then-pending federal habeas corpus petition was dismissed without prejudice so that Petitioner could exhaust his state remedies. *Szabo IV*, 186 Ill. 2d at 22.

[2] The Circuit Court held that the Illinois Supreme Court decision in *People v. Johnson*, 154 Ill. 2d 277 (1993), "dictates that the courts must once again entertain [Petitioner's] claims regarding the ineffectiveness of Bjekich and Doyle." *Szabo IV*, 186 Ill. 2d at 33.

he was confronted with Petitioner's testimony at the sentencing hearing that "because the motion had been denied, he would not testify in his own behalf." *Szabo IV*, 186 Ill. 2d at 28. Bjekich did not attempt to present any other evidence to establish Petitioner's good conduct while in prison. *Szabo IV*, 186 Ill. 2d at 51. This decision is of significant import as will be discussed below. While the trial court denied Petitioner's second post-conviction petition, the trial court found that:

> [T]he defense had an almost unique opportunity to bring a number of disinterested witnesses to testify that [Petitioner's] conduct in the penitentiary . . . was without violence, without threats, and that he would be able to function in that kind of a structured society without the necessity for society killing him. . . . *There is a significant basis to believe in this case that had that testimony been in this record, one juror might have been convinced that while [Petitioner] may have deserved to die for what he did, he didn't need to die.*

*Szabo IV*, 186 Ill. 2d at 54 (Harrison, J., dissenting) (emphasis added).

Upon denial of that petition, Petitioner appealed to the Illinois Supreme Court. *Szabo IV*, 186 Ill. 2d at 22. The Illinois Supreme Court affirmed the denial of the second petition for post-conviction, based on the holding that successive post-conviction petitions were barred unless "proceedings on the initial petition were 'deficient in some fundamental way.'" *Szabo IV*, 186 Ill. 2d at 23. The Illinois Supreme Court also found, in part, that resentencing counsel had not provided ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984).[3]

Justice Harrison dissented and found that the first post-conviction petition was fundamentally defective. He also vigorously dissented from the finding of two judges in the majority that Petitioner

---

[3] Chief Justice Freeman and Justice Heiple specially concurred in the majority opinion written by Justice Miller on res judicata grounds only. The concurring opinion quoted *People v. Flores*, 153 Ill. 2d 264, 273-74 (1992), which recognized the standards set out by the United States Supreme Court in *McClesky v. Zant*, 499 U.S. 467 (1991). However, *McClesky* expressly identified constitutional ineffective assistance of counsel as cause to excuse state procedural default rules. *McClesky*, 499 U.S. at 494.

was afforded effective assistance of counsel by Bjekich and Doyle. *Szabo IV*, 186 Ill. 2d at 49-54. Justices McMorrow and Nickels joined in Justice Harrison's dissent. *Szabo IV*, 186 Ill. 2d at 55.

This divided Illinois Supreme Court ordered Petitioner to be executed by lethal injection on March 22, 1999. *Szabo IV*, 186 Ill. 2d at 31.

On March 29, 1999, the Illinois Supreme Court denied a petition for rehearing.

### B. The Present Proceedings

Petitioner then filed the instant Petition for a Writ of Habeas Corpus, raising the following issues: (1) that he was denied the right to effective assistance of counsel under the Sixth, Eighth, and Fourteenth Amendments at his resentencing where his attorneys failed to investigate and present the testimony of five correctional officials attesting to his good prison behavior; (2) resentencing counsel's failure to investigate and present significant available mitigating evidence about his mental disorders, including his extreme mental and emotional disturbance at the time of the crime, deprived him of the effective assistance of counsel under the Sixth, Eighth, and Fourteenth Amendments; (3) that he was denied the right under the Eighth and Fourteenth Amendments to introduce relevant mitigation evidence at his sentencing hearing when the court excluded polygraph results that showed he was less culpable for the crime; (4) that he was denied the Sixth and Fourteenth Amendment right to confront witnesses when transcripts of previous testimony by witnesses was admitted in aggravation when they were not shown to be unavailable; (5) that his execution is barred by the Eighth Amendment because his current incarceration on death row for almost twenty years is due to state action and constitutes cruel and unusual punishment; and (6) that he was denied the right to counsel at trial where he was represented by an attorney who was disbarred shortly after trial. (Am. Pet. Writ Habeas Corpus at 44, 49, 54, 56, 58, 62.)

## LEGAL STANDARD

A federal court will not grant habeas corpus relief on any claim adjudicated on the merits by a state court unless: (1) the state court applied a United States Supreme Court doctrine unreasonably to the facts of the case; or (2) the state court's decision relied on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d) (2001). For relief based on an unreasonable application of Supreme Court doctrine, the state court's decision must be both incorrect and unreasonable. *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000).

Petitioner must satisfy two requirements to avoid procedural default before a court may reach the merits of his habeas corpus petition: (1) exhaustion of state remedies and (2) fair presentment of any federal claims. *Spreitzer v. Schomig*, 219 F.3d 639, 644 (7th Cir. 2000)(citations omitted). A habeas corpus petitioner exhausts all state remedies when (1) he presents his claims to the highest court for a ruling on the merits or (2) state remedies are no longer available to the petitioner at the time his federal habeas petition is filed. *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991)(citations omitted). "For a constitutional claim to be fairly presented to a state court, both the operative facts and the 'controlling legal principles' must be submitted." *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999). "If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted." *Rodriguez*, 193 F.3d at 917 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)).

## DISCUSSION

### A. The Claim of Ineffective Assistance of Counsel

Petitioner's principal ground for relief--that he was denied effective assistance of counsel at his trial and resentencing hearing, that he was denied the right to introduce relevant mitigation

evidence, and that he was denied the right to confront witnesses–is properly before this Court. The fact that some of the claims were not raised in all four appeals to the Illinois Supreme Court does not mean that the claims are procedurally defaulted. The remaining claims of Petitioner do not merit habeas corpus relief for various reasons, as will be discussed later in this opinion.

"An appellate court's determination on an issue is binding on both the trial court on remand and the appellate court on subsequent appeal." *People v. Colter*, 237 Ill. App. 3d 486, 488 (1992) (citing *People v. Lyles*, 208 Ill. App. 3d 370 (1990)). The Illinois Supreme Court stated several times that it would not address issues that it had ruled on in a previous appeal. *See, e.g.*, *Szabo II*, 113 Ill. 2d at 96-97 (persisting in earlier ruling on constitutionality of Illinois death penalty statute); *Szabo I*, 94 Ill. 2d at 351 (same). Thus, it would have been fruitless for Petitioner to continue to appeal issues that had already been denied by the Illinois Supreme Court.

Claims of ineffective assistance of counsel are evaluated under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner must show that his attorney's performance was unreasonably deficient and this deficient performance prejudiced him such that there is a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 687, 688, 694. There is a strong presumption that counsel's performance was "within the wide range of reasonable professional assistance." *United States ex rel. Harrington v. O'Sullivan*, 923 F. Supp. 122, 125 (N.D. Ill. 1996) (quoting *United States v. Olsen*, 846 F.2d 1103, 1108 (7th Cir. 1988) (quoting *Strickland*, 466 U.S. at 689)). Under *Strickland*, Petitioner cannot challenge his attorney's decision not to investigate and present evidence if it was a strategic choice made after an investigation of the law and facts "relevant to plausible options." 466 U.S. at 690. "[C]ounsel has a duty to make reasonable investigations to make a reasonable decision that makes particular

investigations unnecessary." *Strickland*, 466 U.S. at 690-91.

In the sentencing context, a petitioner must show that counsel's performance was deficient and that "a reasonable probability exists that, but for counsel's substandard performance, the sentencer 'would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" *Hall v. Washington*, 106 F.3d 742, 749 (citing *Strickland*, 466 U.S. at 695; *Brewer v. Aiken*, 935 F.2d 850, 855 (7th Cir. 1991)). "[D]efense counsel must make significant effort, based on reasonable investigation and logical argument, to ably present the defendant's fate to the jury and to focus attention of the jury on any mitigating factors." *Hall*, 106 F.3d at 749 (quoting *Kubat v. Thieret*, 867 F.2d 351, 369 (7th Cir. 1989)).

> Where it is apparent from evidence concerning the crime itself, from conversation with the defendant, or from other readily available sources of information, that the defendant has some mental or other condition that would likely qualify as a mitigating factor, the failure to investigate will be ineffective assistance of counsel. . . . Similarly, where it appears from trial testimony that a witness might be willing to speak on behalf of one's client, or a defendant provides the names of possible mitigation witnesses, or individuals call to volunteer their testimony, counsel must take the time to contact those witnesses and determine for himself whether their testimony would be helpful.

*Hall*, 106 F.3d at 749-50 (internal citation omitted).

Petitioner alleges two ways in which his resentencing counsel's performance was deficient: resentencing counsel (1) failed to investigate and present the testimony of five correctional officials who would have attested to his good conduct in prison and (2) failed to investigate and present mitigation evidence about Petitioner's mental disorders.

Resentencing counsel were Bjekich and Doyle. They failed to investigate and present the testimony of five correctional officials who would have testified to Petitioner's good conduct in prison at the resentencing hearing which resulted in the imposition of the death penalty. This failure

-10-

falls outside the range of reasonable professional conduct. It is clear from the evidence presented that Bjekich did not make a reasonable investigation such that he could reasonably decide that further investigation was unnecessary. Bjekich did not make any investigation at all. At the time of Petitioner's second sentencing hearing, Petitioner had been incarcerated for five years and had an exemplary prison record.

At the evidentiary hearing, Bjekich testified that he had received Petitioner's prison records, yet he made no attempt to investigate or present evidence of Petitioner's good conduct in prison from disinterested witnesses that were readily available to him. *Szabo IV*, 186 Ill. 2d at 50 (Harrison, J., dissenting). Bjekich testified as follows:

> Q:    Would you have noted whether there are any names of any guards on any of
>       the papers that you were given?
> A:    I don't recall any, and I really couldn't say that it would have been important
>       to me to look at a guard's name in a DOC record.

(P.C. II, R. 183.) Bjekich did not consider the importance of having five *disinterested* witnesses testify to Petitioner's peaceful behavior in prison nor did he try to contact those witnesses on Petitioner's behalf. Therefore, Petitioner has established that resentencing counsel's performance was deficient.

Furthermore, the fact that Bjekich had only Petitioner's family members testify as to his good conduct in prison and intended to have Petitioner testify as to the same was not a reasonable professional decision and resulted in prejudice to Petitioner. The testimony of Petitioner and his family would likely be considered biased and of limited probative value. Conversely, the testimony of five disinterested correctional officers would have had considerable impact on a jury. *See Skipper v. South Carolina*, 476 U.S. 1, 8 (1986). "[T]he jury could have drawn favorable inferences from

this testimony regarding [P]etitioner's character and his probable future conduct if sentenced to life in prison." *Skipper*, 476 U.S. at 4. The *Skipper* Court further reasoned that "there is no question but that such inferences would be 'mitigating' in the sense that they might serve 'as a basis for a sentence less than death.'" 476 U.S. at 4-5 (citation omitted).

In addition, "information from prison guards may be particularly helpful in deciding clemency petitions 'as it is the guards who have daily contact with [the inmate] and therefore can realistically assess his person.'" *Hall*, 106 F.3d at 752 (quoting *Shimer v. Washington*, 100 F.3d 506, 508 (7th Cir. 1996)). Moreover, the fact that a defendant was, and in all likelihood would continue to be, a well-behaved inmate has been identified by jurors as a factor that would make them less likely to impose the death penalty. *See* Stephen P. Garvey, *Aggravation and Mitigation in Capital Cases: What Do Jurors Think?*, 98 Colum. L. Rev. 1538, 1559 (1998).

Thus, there is a reasonable probability that, but for Bjekich and Doyle's substandard performance, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant the imposition of the death penalty. *Hall*, 106 F.3d at 749. Therefore, resentencing counsel's failure to investigate and present the testimony of five correctional officers who would have testified to Petitioner's good conduct in prison was ineffective assistance of counsel.

Petitioner also argues that Bjekich's failure to investigate and present mitigating evidence about his mental disorders was ineffective assistance of counsel. At Petitioner's trial and first sentencing hearing, three doctors testified that he had personality disorders and was suffering from drug and alcohol abuse at the time of the murders. Petitioner had attempted suicide twice, once in 1977 and again in 1978, shortly before the time of the relevant conduct. He had used cocaine four

times on the day of the crime; more significantly, one of those times was immediately before the murders. None of this evidence was presented at the second sentencing hearing.

At the evidentiary hearing, Bjekich testified that he reviewed the transcripts of the trial and the first sentencing hearing. Bjekich also testified that the defense plan at the second sentencing hearing was to emphasize the disparity in sentences that Petitioner and Leatherman received, to show that Petitioner's problems with drugs had an effect on Petitioner's behavior on the night of the murders, and to garner the jury's sympathy by having Petitioner and Petitioner's family testify. (PC.II, R.172-73.) While Bjekich testified that he reviewed the transcripts from the trial and the sentencing hearing, at the evidentiary hearing on Petitioner's second post-conviction petition, Bjekich testified that he could not remember any testimony, besides Petitioner's, on Petitioner's alcohol and drug abuse or personality disorders. (PC.II, R.173, 212, 216.) He also testified that he could not remember why he did not obtain a psychologist to evaluate Petitioner and could not remember whether there was a strategic reason for not doing so. (PC.II, R. 217.)

It is clear from the testimony that the decision not to obtain a psychologist to testify in mitigation as to Petitioner's drug and alcohol abuse and personality disorders was not a strategic one. Thus, that decision is not entitled to any deference. *See Strickland*, 466 U.S. at 690.

It is equally clear that neither Bjekich's nor Doyle's performances were professionally reasonable. Bjekich and Doyle were presented with ample evidence from the record that three doctors diagnosed Petitioner as having personality disorders and as suffering from drug and alcohol abuse. Furthermore, the record also established prior suicide attempts and drug use the day of the crime. It was apparent here, from the record that was readily available to Doyle and which Bjekich testified he reviewed, that Petitioner had mental conditions that would qualify as a mitigating factor.

-13-

Moreover, it is clear from Bjekich's testimony at the evidentiary hearing that Bjekich and Doyle failed to investigate any of Petitioner's mental conditions. Thus, Petitioner has satisfied the deficient performance element on this claim.

Petitioner was prejudiced by Bjekich and Doyle's failure to investigate and present mitigation evidence about his mental disorders. Extreme mental and emotional disturbance is a mitigating factor that must be considered by the sentencer under Illinois law. *See* 720 Ill. Comp. Stat. 5/9-1(c)(2) (2001). Evidence about Petitioner's mental disorders and drug abuse at the time of the murders is probative as to the determination of the imposition of the death sentence, particularly when such evidence is coupled with testimony regarding Petitioner's present peaceful behavior in prison free from the influence of drugs and in a controlled environment.

There is a reasonable probability that, but for Bjekich's and Doyle's substandard performances, the jury would have concluded that the balance of aggravating and mitigating circumstances did not warrant the imposition of the death penalty. *Hall*, 106 F.3d at 749. Therefore, Bjekich and Doyle's failure to investigate and present mitigation evidence about Petitioner's mental disorders was ineffective assistance of counsel, particularly when considered in conjunction with their failure to present evidence of Petitioner's good conduct in prison.

Based on the foregoing, Petitioner's attorneys' performance was unreasonably deficient which prejudiced Petitioner in that there is a reasonable probability of a favorable result from his sentencing hearing. The Illinois Supreme Court majority applied the *Strickland* doctrine unreasonably to the facts of the case and relied on an unreasonable reading of the facts in light of the evidence presented. The Amended Petition for a Writ of Habeas Corpus is granted on this ground.

## B. The Remaining Claims for Habeas Corpus

Petitioner's remaining grounds for relief are without merit.

Petitioner next argues that he was denied the right to introduce relevant mitigation evidence at his sentencing hearing when the trial court excluded polygraph results that showed he was less culpable for the crime. "[T]he Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering as a *mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (footnotes omitted). Petitioner argues that the trial court unreasonably applied *Lockett* when it excluded the polygraph results. Polygraph evidence is not admissible under Illinois law. *See People v. Baynes*, 88 Ill. 2d 225, 244 (1981). There is nothing in *Lockett* that suggests that inadmissible mitigation evidence must be presented to the sentencer. To the contrary, *Lockett* expressly states that "[n]othing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense." *Lockett*, 438 U.S. at 605 n.12. A court also has the authority to exclude evidence that is inadmissible under the law.

Furthermore, the Illinois Supreme Court rejected this argument in Petitioner's first appeal because it doubted the reliability of the polygraph results and feared that the results would divert the jury's attention from consideration of mitigating and aggravating factors. *Szabo I*, 94 Ill. 2d at 362. Petitioner cites *Rupe v. Wood*, 93 F.3d 1434 (9th Cir. 1996), to support his claim that the polygraph results were wrongly excluded. In *Rupe*, the Ninth Circuit held that exclusion of polygraph results at the defendant's sentencing hearing violated the defendant's due process rights to have relevant,

mitigating evidence presented to the sentencer. 93 F.3d at 1441.

However, *Rupe* is distinguishable. In Washington, polygraph results could be admitted under certain circumstances. *See Rupe*, 93 F.3d at 1439 (citation omitted). Illinois has no such provision for the admissibility of polygraph results. Therefore, the polygraph results were excluded as inadmissible evidence. "Violations of state evidentiary rules 'may not be questioned in federal habeas proceedings unless they render the trial so fundamentally unfair as to constitute a denial of federal constitutional rights.'" *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991) (quoting *Searcy v. Greer*, 768 F.2d 906, 910 (7th Cir. 1985), *cert. denied*, 474 U.S. 996 (1985)). It does not appear that the sentencing hearing was rendered fundamentally unfair by the exclusion of the polygraph results. Therefore, there is no evidence to suggest that the Illinois Supreme Court applied a United States Supreme Court doctrine unreasonably to the facts of the case or relied on an unreasonable reading of the facts in light of the evidence presented. Thus, habeas corpus relief is not appropriate on this ground.

Petitioner's next argument is that he was denied the right to confront witnesses when transcripts of previous testimony by witnesses were admitted in aggravation when the witnesses were not shown to be unavailable. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." Petitioner claims that he was denied the right to confront witnesses when prior testimony of witnesses was read into evidence.

Respondent argues that this claim has been procedurally defaulted because it rests on an independent and adequate state procedural ground. *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991); *Steward v. Gilmore*, 80 F.3d 1205, 1211 (7th Cir. 1996). In *Szabo II*, the Illinois Supreme

Court held that the issue was waived because Petitioner did not raise it in a post-trial motion. 113 Ill. 2d at 93. Illinois law provides that a defendant may file a written motion for a new trial within thirty days following a verdict or finding of guilt. 725 Ill. Comp. Stat. 5/116-1 (2001).

A state procedural rule is adequate if it is "firmly established and regularly followed." *James v. Kentucky*, 466 U.S. 341, 348-49 (1984); *see also Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990) (holding that state courts must act in a consistent and principled way for a state procedural ground to be adequate). The law requiring the filing of post-trial motions was in effect when Petitioner appealed and had been applied in other cases. *See* 725 Ill. Comp. Stat. 5/116-1; *People v. Caballero*, 102 Ill. 2d 23, 31 (1984); *People v. Williams*, 97 Ill. 2d 252, 302 (1983). Thus, this rule is firmly established and regularly followed. Therefore, this ground has been procedurally defaulted.

Once procedural default has been established, the petitioner may still present those claims in federal court if he can demonstrate (1) cause for his default and (2) actual prejudice as a result of the alleged violations of federal law. *Steward*, 80 F.3d at 1211-12. Petitioner can show cause "by showing that 'some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule.'" *United States ex rel. Taylor v. Barnett*, 109 F. Supp. 2d 911, 920 (N.D. Ill. 2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Alternatively, the petitioner can present his claims if he can show that failure to consider the claim will result in a "fundamental miscarriage of justice". *Coleman*, 501 U.S. at 750. Under *Schlup v. Delo*, 513 U.S. 298, 315, 327 (1995), a fundamental miscarriage of justice has occurred when the petitioner can show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." "Accordingly, without new evidence of innocence, even a meritorious

constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim." *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001) (citing *Schlup*, 513 U.S. at 316).

Petitioner has not demonstrated any objective factor external to the defense that impeded his efforts to present the defaulted ground for relief to the Illinois Supreme Court. Moreover, Petitioner has not presented any new evidence that would suggest that he is innocent. Therefore, Petitioner has not made a showing sufficient to survive a procedural default.

Finally, Petitioner claims that he was denied the right to counsel at trial where he was represented by an attorney who was disbarred shortly after trial. Habeas corpus relief is not appropriate on this claim because the Illinois Supreme Court did not apply a United States Supreme Court doctrine unreasonably to the facts of the case and the state court's decision did not rely on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

"Courts consistently have declined to adopt a *per se* rule that ineffective assistance always results when a disciplinary action is pending against the defendant's attorney." *Bond v. United States*, 1 F.3d 631, 636 (7th Cir. 1993); *see, e.g., Vance v. Lehman*, 64 F.3d 119 (3d Cir. 1995) (holding representation by an attorney whose license to practice was revoked after trial for prior unrelated conduct did not deny defendant effective assistance of counsel); *United States v. Stevens*, 978 F.2d 565, 568 (10th Cir. 1992) (holding that an attorney's representation is not *per se* ineffective where the attorney is disbarred without notice); *United States v. Mouzin*, 785 F. 2d 682, 696-697 (9th Cir. 1986) (holding that an attorney's disbarment or suspension for conduct unrelated to representation of defendant, without more, does not constitute ineffective assistance of counsel); *Waterhouse v. Rodriguez*, 848 F.2d 375, 383 (2d Cir. 1988) (holding that defendant was not denied the right to

effective assistance of counsel where attorney was disbarred during a suppression hearing and withdrew immediately upon learning of disbarment). There is also no *per se* rule of ineffective assistance of counsel if an attorney's license is suspended after the defendant's trial due to his neglect of other clients' matters. *Bond*, 1 F.3d at 637. Petitioner must show trial counsel's errors and omissions that prejudiced him. *Bond*, 1 F.3d at 637.

Petitioner has alleged that his trial counsel had received letters that complaints had been filed with the Attorney Registration and Disciplinary Commission ("ARDC"), that the ARDC was investigating seventy-eight charges of misconduct, and that his trial counsel was disbarred on November 20, 1988. (Am. Pet. Writ Habeas Corpus ¶¶ 215, 217.) However, Petitioner has not alleged or shown any errors or omissions by trial counsel that prejudiced him. Furthermore, Petitioner has not established a nexus between the ARDC's investigation and an error or omission by trial counsel. *See Bond*, 1 F.3d at 637. Moreover, Petitioner has not even alleged that trial counsel's disbarment was related to his representation of Petitioner. *See Vance*, 64 F.3d at 124. Therefore, there is no evidence to suggest that the state court applied a United States Supreme Court doctrine unreasonably to the facts of the case or relied on an unreasonable reading of the facts in light of the evidence presented.

Petitioner did not raise the claim in any of his appeals to the Illinois Supreme Court that his execution is barred by the Eighth Amendment because his current incarceration on death row for almost twenty years is due to state actions and constitutes cruel and unusual punishment. Thus, this claim is procedurally defaulted. *O'Sullivan*, 526 U.S. at 848.

Petitioner has not demonstrated any objective factor external to the defense that impeded his efforts to present the defaulted ground for relief to the Illinois Supreme Court. Moreover, Petitioner

has not presented any new evidence that would suggest that he is innocent. Therefore, Petitioner has not made a showing sufficient to survive a procedural default.

However, even if Petitioner had demonstrated cause and actual prejudice or that a fundamental miscarriage of justice would occur if his claims were not considered, Petitioner would not be entitled to relief on the defaulted ground. Petitioner cites to no case law or statute that supports the proposition that he cannot be executed because he has been on death row for almost twenty years. Furthermore, the delays that Petitioner complains of are safeguards that have been established to protect him. Petitioner has been able to appeal his case to the Illinois Supreme Court four times and to file two habeas petitions, one that was dismissed without prejudice while petitioner exhausted his state court remedies and the instant petition. Thus, Petitioner has not been harmed by the delays.

Moreover, Petitioner has not presented any evidence that his execution has been stayed and he has been incarcerated on death row due to an unreasonable application of a United States Supreme Court doctrine or reliance on an unreasonable reading of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Therefore, habeas corpus relief would be inappropriate on this ground.

## SUMMARY

The petition for a writ of habeas corpus is granted based on Petitioner's assertion of ineffective assistance of counsel at the resentencing hearing due to resentencing counsel's failure to investigate and present (1) the testimony of five correctional officers attesting to Petitioner's good prison behavior and (2) significant mitigation evidence about Petitioner's mental disorders. All of Petitioner's other grounds for a writ of habeas corpus are without merit.

## CONCLUSION

For the reasons stated herein, John Szabo's Amended Petition for Writ of Habeas Corpus is granted. Execution of the writ is stayed on the condition that the State of Illinois grants John Szabo a new sentencing hearing and provides appointed counsel, within a reasonable time, not to exceed 120 days.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: March 21, 2002